# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4391-CV-C-NKL |
| ) | |
| THE STATE OF MISSOURI ) | |
| ) | |
| and ) | |
| ) | |
| ROBIN CARNAHAN, ) | |
| MISSOURI SECRETARY OF STATE, ) | |
| in her official capacity. ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is the Motion for Summary Judgment [Doc. # 8] filed by the State of Missouri and Robin Carnahan, who is joined in this suit in her official capacity as the Secretary of State (collectively "Missouri"). For the reasons set forth below, the Court grants in part and denies in part Missouri's Motion.

**I.      Background**

　　**A.      National Voter Registration Act**

In 1993 Congress enacted the National Voter Registration Act ("NVRA"), which governs voter registration for federal elections. It is sometimes referred to as the "Motor-Voter Act." *See* 42 U.S.C. §§ 1973gg-2 to 1973gg-9. The NVRA provides in relevant part as follows:

1

(a) In general

In the administration of voter registration for elections for Federal office, each Sate shall–

. . . .

  **(3)** provide that the name of a registrant may not be removed from the official list of eligible voters except–

    **(A)** at the request of the registrant;

    **(B)** as provided by State law, by reason of criminal conviction or mental incapacity; or

    **(C)** as provided under paragraph (4);

  **(4)** conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of–

    **(A)** the death of the registrant; or

    **(B)** a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section;

**. . . .**

(b) Confirmation of voter registration

  Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office–

  **(1)** shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 42 U.S.C. 1973 et seq.); and

  **(2)** shall not result in the removal of the name of any person from

the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote, except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) of this section to remove an individual from the official list of eligible voters if the individual–

**(A)** has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

**(B)** has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.

(c) Voter removal programs

**(1)** A State may meet the requirement of subsection (a)(4) of this section by establishing a program under which--

**(A)** change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

**(B)** if it appears from information provided by the Postal Service that–

**(i)** a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

**(ii)** the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) of this section to confirm the change of address.

3

> **(2) (A)** A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.
>
> . . . .
>
> (d) Removal of names from voting rolls
>
> **(1)** A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant–
>
> **(A)** confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or
>
> **(B) (i)** has failed to respond to a notice described in paragraph (2); and
>
> **(ii)** has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

42 U.S.C. § 1973gg-6.

The NVRA also directs each state to designate "a state officer or employee as the chief state election official to be responsible for coordination of state responsibilities under [the NVRA]." 42 U.S.C. § 1973gg-8. Missouri has designated the Secretary of State as the chief election official to coordinate NVRA responsibilities for Missouri. Mo. Rev. Stat. § 115.136(1) ("The secretary of state shall be the chief state election official responsible for the coordination of state responsibilities under the [NVRA]."). Elections

4

in Missouri, however, are actually conducted locally by 116 local election authorities, 114 of which are elected county officials.

### B. Missouri's Statutory Compliance with the NVRA

After the passage of the NVRA, Missouri enacted HB 1411, which amended Missouri's statutory scheme for voter registration and voter list maintenance. Missouri contends that its "general program," as required by the NVRA, is contained in HB 1411 and its subsequent amendments. Missouri's statutory program provides that the systematic removal of names of ineligible voters from voter registration lists must be completed at least 90 days prior to the date of a primary or general election for federal office. *See* Mo. Rev. Stat. §§ 115.158.2 and .4, 115.179.1. This provision is consistent with the NVRA . *See* 42 U.S.C. § 1973gg-6(c)(2)(A). Missouri's statutory program also provides for the removal of registered voters based on death, felony conviction, or mental incapacity. *See* Mo. Rev. Stat. §§ 115.195, 115.199. These provisions are consistent with the NVRA, 42 U.S.C. § 1973gg-6(a)(3) and (4), as is Missouri's statutory mandate that each local election authority shall conduct a canvass of registered voters. The canvass must occur every two years. *See* Mo. Rev. Stat. § 115.179. If, as a result of the canvass, the Post Office notifies the local election authority that the registrant no longer resides at his or her registration address, the local election authority is required to send a confirmation mailing to the registrant. Mo. Rev. Stat. §§ 115.163.3, 115.193. These Missouri statutes also comply with the NVRA. *See* 42 U.S.C. § 1973gg-6(c) and (d)(2). Upon completion of the canvass, Missouri's statutory program requires the removal of the

5

registrant if the registrant fails to respond to the confirmation notice, but only after the registrant has not voted in two consecutive general elections after the date of the notice. Mo. Rev. Stat. § 115.193.1. If the registrant responds and indicates a change of residence to a place outside the local election authority, the election authority immediately removes the registrant's name. Mo. Rev. Stat. § 115.193.1(1). These provisions are also consistent of the requirements of the NVRA. *See* 42 U.S.C. § 1973gg-6(d).

    **C.**    **Additional Compliance Efforts**

        *1.*    *Central Voter Registration Database: 1996-2004*

Prior to 1996, some local election authorities maintained voter registration information in hard copy only. Other local election authorities maintained computerized records, but the local election authorities' computer systems were not compatible with each other.

In 1996 Missouri entered into a contract with Election Technology Company for the development of a state voter registration system. Under this contract, Missouri was to receive a Centralized Voter Registration Database ("CVRD"). Also, some local election authorities were to receive Local Voter Registration Systems ("LVRS"). The contract also called for the installation of hardware and software, data conversion and training, and maintenance and support for these computer systems. For those local election authorities that did not have a computer, the Missouri legislature appropriated funds to purchase a computer and a printer.

The Secretary of State managed the CVRD while the 116 local election authorities

6

managed the LVRS for their respective jurisdictions. Local election authorities were to update the voter registrant data in the LVRS on a weekly or monthly basis. These updates were then transmitted to the CVRD located in the Secretary of State's office. Although the CVRD and LVRS operated on different software, the data contained in the LVRS could be entered in the CVRD.

In addition to receiving information from local election authorities, the Secretary of State's office received information from other agencies. The Missouri Circuit Courts reported to the Secretary of State's office the identity of those who were adjudged incapacitated or those who had been convicted of a felony. The Secretary of State would then compare those names with the CVRD and pass on the information to the appropriate local election authority for further processing. Similarly, the Registrars of Vital Statistics reported directly to the Secretary of State's office the identity and address, if known, of individuals over eighteen who had died. The Secretary of State's office compared this information with the CVRD and, if the information matched, the Secretary of State sent this information to the appropriate local election authority.

Based on the evidence before the Court, it does not appear the Secretary of State actually updated the CVRD; instead, the Secretary of State would pass on information it obtained to local election authorities and then rely on them to update their LVRS which would, in turn, update the CVRD. Missouri expended in excess of six million dollars to purchase, support, and implement the CVRD.

### 2. *Missouri Voter Registration System: 2004 to Present*

In 2004, the Secretary of State began a process that would eventually replace the CVRD with the Missouri Voter Registration System ("MVRS"). The MVRS is a single voter registration database that is available from the Secretary of State's extranet connection. Once this system is fully implemented, the local election authorities enter data directly into the MVRS via the Secretary of State's website. Individual data bases will no longer be maintained.

As of late 2005, 109 of the 116 local election authorities in Missouri have transferred their data to the MVRS. Data transfers for the remaining seven local election authorities was scheduled to be completed by January 1, 2006.

The Missouri statute creating the MVRS places the burden of developing and administering the MVRS on the shoulders of the Secretary of State. The statute states, "The system shall be maintained and administered by the secretary of state and contain the name and registration information of every legally registered voter in Missouri." Mo. Rev. Stat. § 115.158.1. The statute also compels the Secretary of State and local election authorities to conduct routine maintenance on the MVRS by (1) removing names in accordance with the NVRA; (2) requiring the name of each registered voter to appear in the system; (3) removing only voters who are not registered or who are not eligible to vote; and (4) eliminating duplicate names from the system. *Id.* at 2(1)-(4). Under the Missouri statute, the Secretary of State is also obligated to "develop procedures to ensure that voter registration records within the system are accurate and updated regularly." *Id.* at 4.

### 3. *Training and Monitoring*

Since the enactment of the NVRA in the mid-1990s, the Secretary of State has presented several training programs on the NVRA to local election authorities at various seminars across Missouri. Additionally, the Secretary of State has published several publications related to enforcement of the NVRA and some of those materials are posted on the Secretary of State's extranet website.

In September 2005, the Secretary of State undertook training for all 116 of the local election authorities and the training included materials on the list-maintenance procedures of the NVRA. *See* Def. Ex. 1-T. The Secretary of State concluded the training for all 116 local election authorities before January 1, 2006.

According to the Secretary of State's Motion, it monitors the local election authorities' compliance with the NVRA by sending out a registration survey, then compiling the results of those surveys, and then submitting the compilation report to the United States Election Assistance Commission. Federal law mandates the submission and compilation of these surveys. The surveys may be found at Def. Ex. 1-V, and the results at Def. Ex. 1-W.

### 4. *The Action Plan*

In November 2005--after the Government contacted the Secretary of State about Missouri's noncompliance with the NVRA–the Secretary of State adopted an Action Plan to further educate the local election authority officials about the NVRA and encourage compliance. *See* Def. Ex. 1-X. According to the Action Plan, the Secretary of State was

9

to prepare a manual for local election authorities to help them conduct their NVRA list maintenance activities. The Action Plan also called for the Secretary of State to continue its training sessions "at regular intervals" to educate local election authorities. *Id.* at ¶ 2. In addition to the manual and the continued training, the Action Plan provided that the Secretary of State would "send notifications, in writing, to the local election authorities to remind each local election authority of the requirements for NVRA compliance."
*See* Def. Ex. 1-X at ¶ 3.

The Action Plan will also track list maintenance by local election authorities. Paragraph 4 of the Action Plan states:

> During 2006, the State will develop a method of tracking list maintenance activities of the local election authorities. This method will consist of tracking list maintenance activity conducted by local election authorities either through the statewide voter registration list itself or an appropriate external mechanism.

*Id.* at ¶ 4. If these tracking activities uncover discrepancies or NVRA non-compliance, the Secretary of State will contact the appropriate Local election authority and

> [I]dentify the list maintenance activities that appear to be inconsistent with NVRA. At a minimum, the notification process will consist of:
>
> • written notification detailing the maintenance activities that appear to be inconsistent with NVRA based on the tracking method;
>
> • a telephone call subsequent to the written notification to address any questions and to provide information regarding NVRA compliance;
>
> • written follow-up communication with the local election authorities to monitor progress; and
>
> • contact with the local election authority to request a meeting if there

10

>is no progress towards compliance with NVRA or if the [Secretary of State]'s office does not receive a response from the local election authority.

*Id.* at ¶ 5.

The Secretary of State will also use the MVRS database to monitor compliance with the NVRA. If the Secretary of State discovers non-compliance, it will implement the notification procedures in paragraph 5 of the Action Plan.

### D. The Government's Investigation[1]

In July 2005, the Government began an investigation into Missouri's compliance with the NVRA. The Government found that in approximately one third of Missouri's counties, the number of registered voters exceeded the number of eligible voters set forth in the recent census data. For example, in Reynolds County, the ratio of registered voters to the voting age population reached a statewide high of 153%. In both Reynolds and Pemiscot counties, the number of registered voters exceeded the total population.[2]

The Government has also determined that twenty-two Missouri counties had particularly low numbers of inactive registrants. The Government claims that the low number of inactive voters in those counties indicates they were not conducting routine

---

[1] All facts are viewed in the light most favorable to the Government, the non-movant.

[2] It is unclear whether this phenomena is related to the NVRA's dual requirements that drivers license applicants must be given an opportunity to register to vote, and a non-response to a voter canvass requires a two year delay before names can be removed from the voter registration lists. The former requirement was intended to substantially increase the number of persons who are registered to vote and the latter requirement delays the removal of people who are no longer eligible to vote.

11

maintenance of their voter lists as mandated by the NVRA.

There is also data that twelve Missouri counties have dropped more than 20% of their registered voters from active registration in a single nine-month period. The Government claims that this data indicates that these counties were not complying with the NVRA's dictates regarding removing voters from the active registration list.

In addition to its data analysis, the Government interviewed several local election authority officials who were charged with carrying out the mandates of the NVRA at the county and municipal levels. The Government discovered from these interviews that some local election authorities were not conducting routine canvasses of registered voters, that some local election authority officials did not have training about the NVRA or an awareness of its obligations, and that voters in some local election authorities were dropped from the active registration list without the protections mandated by the NVRA.

### E. The Complaint and Missouri's Motion

In its Complaint against Missouri and the Secretary of State, the Government alleges that Defendants violated several provisions of the NVRA: (1) Missouri failed to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the registrant dying or moving (Complaint at ¶¶ 7, 13-16); (2) Missouri failed to implement a program that was uniform, nondiscriminatory, and in compliance with the Voting Rights Act (Complaint at ¶¶ 8, 13-16); (3) Missouri failed to implement a program that prevented the removal of the name of any person from the official list of voters by reason of the

12

person's failure to vote (Complaint at ¶¶ 9, 14); and (4) at least 90 days before the date of a primary or general election for federal office, Missouri failed to complete a program to ensure that the names of ineligible voters have been removed from the official list (Complaint at ¶¶ 8, 13-16, 18). The Government's Complaint is not clear as to what non-compliance conduct it alleges against Missouri. In some respects, it appears the Government alleges that Missouri itself failed to comply with the NVRA. In other respects, it appears the Government is attempting to hold Missouri liable for the conduct of local election authorities that does not comply with the NVRA. The Complaint does not separate its claims into separate counts nor does it explicitly state the alleged wrongful actors.

The pending Motion seeks summary judgment on all of the Government's claims.

## II.   Discussion

### A.   Enforcement

It appears that the Government is seeking, in large part, an order which will require Missouri, and specifically the Secretary of State, to enforce the NVRA and the corresponding Missouri statutes against local election authorities. Because neither Missouri State law nor the NVRA gives the Secretary of State enforcement authority, summary judgment is granted in favor of the Defendants on those claims that seek to hold her or the State responsible for the enforcement of the NVRA against local election authorities.

The NVRA provides a right of enforcement to only two categories of plaintiffs: the

United States Government and "a person who is aggrieved by a violation of [the NVRA]." 42 U.S.C. §§ 1973gg-9(a) and (b). The State of Missouri is not a "person" and neither is the Secretary of State when she is sued in her official capacity. Therefore, neither can be aggrieved persons under the NVRA.[3] Nor does it appear that the NVRA ever contemplated that the Secretary of State would have NVRA enforcement authority because the statute specifically says that the designated chief state election official is "responsible for coordination of state responsibilities under [the NVRA]." *See* 42 U.S.C. § 1973gg-8. Coordination means "harmonious adjustment or interaction." The American Heritage Dictionary of the English Language (4th ed. 2000). In contrast, "enforcement" means to "compel observance or obedience to." *Id.* Force and harmonious adjustment are incompatible terms. The decision of Congress to make the United States Government shoulder the burden of enforcing the NVRA also makes sense because the NVRA gives no money to Missouri for the cost of complying with the NVRA, even though the NVRA relates to federal elections, not state elections.

As for Missouri's statutory program to implement the terms of the NVRA, the Secretary of State was not given any authority by the Missouri legislature to enforce those statutes. While a violation of those statutes is subject to criminal penalty, *see* Mo. Rev. Stat. § 115.641, the Secretary of State has no authority to pursue criminal charges against a local election authority. The decision of whether to prosecute a local election authority

---

[3] Based on the record before the Court, it does not appear that any aggrieved person wants to sue to protect his or her own interests.

is a decision within the discretion of an independently elected prosecuting attorney in the jurisdiction where the local election authority is located.

The only basis for finding that Missouri is responsible for the conduct of the local election authorities rests on the theory that Congress intended the states to adopt statutes that both incorporated the terms of the NVRA and provided for direct enforcement of those state statutes by statewide officials. The Court, however, does not believe that Congress intended the NVRA to alter the longstanding division of authority between county and statewide officials. It would be radical for this Court to find such an intent absent clear direction, which is not present here. The NVRA in fact suggests otherwise, because NVRA gives enforcement responsibilities to the federal government, so there is a mechanism for enforcement even if the states do not choose to make their statewide officials responsible for enforcement.

The Court will briefly address the Government's argument that the State cannot delegate its NVRA responsibility to a subordinate jurisdiction. In support of that argument, the NVRA cites *United States v. New York*, 255 F. Supp. 2d 73 (E.D. N.Y. 2003). In that case, the Eastern District of New York found that the relevant state agencies were responsible for ensuring that their district offices complied with NVRA. The court said:

> [The state agencies] correctly state that the NVRA does not explicitly require that state agencies ensure NVRA compliance by county or city-run district offices. It matters not. It would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local

municipal agencies.

*Id.* at 79.

This was a logical conclusion given the facts in *New York* because the state had control over the local offices which administered the state's child welfare and elderly programs. That is not the case in Missouri as the 116 local election authorities in Missouri are in no way subordinate or accountable to the Secretary of State. The 116 local election authorities in Missouri are not employees of the Secretary of State's office nor do they answer to the directives of that office. Almost all of them are independently elected public officials.

In the other cases cited by the parties, the states which were successfully sued under the NVRA had not themselves complied with the NVRA. *See Assoc. of Community Organizations for Reform Now (ACORN) v. Miller*, 129 F.3d 833 (6th Cir. 1997) (suing Michigan election official and other state officials where Michigan refused to implement NVRA provisions into state law); *ACORN v. Edgar*, 56 F.3d 791 (7th Cir. 1995) (suing Illinois election official and other state officials on same grounds). In contrast, Missouri did enact state statutes to comply with the NVRA, and there is no evidence that the division of authority between state and local officials was done to thwart the NVRA. Missouri's Constitution and statutes made this allocation long before the NVRA was conceived and the allocation is consistent with the American tradition of dividing power between myriad elected officials to maintain checks and balances.

The history of the NVRA in Missouri also demonstrates that the Government has

16

the authority and capacity to enforce the NVRA against local election officials. The Government previously sued an individual local election authority for its violations of the NVRA rather than seeking suit against Missouri as a whole. *See United States v. Board of Election Commissioners of the City of St. Louis*, Case No. 04-1235 (E.D. Mo.). That case was resolved by consent decree which required the defendant to take corrective action. This was done even though the local authority is a creature of state statute and does not have separate sovereignty. Having exercised its authority successfully, the Government cannot now complain that it is not able to do that which it has already done.

The Court acknowledges that suits against all the non-compliant local election authorities would be more time consuming than suing the State and shifting to it the responsibility of local enforcement. However, when it comes to issues of federalism, inefficiency is a matter for Congress, not the Court.

To the extent the Government's claims are based on the Government's contention that Missouri has violated the NVRA because it failed to adequately enforce the NVRA against local election authorities, summary judgment is granted in favor of Missouri and the Secretary of State.

### B. Does Missouri's Program Comply With the NVRA?

Although Missouri is not required to enforce the NVRA against local election officials, it must itself comply with the terms of the NVRA. The parameters of that obligation are in dispute. Missouri contends it is in compliance with the NVRA because it has passed state statutes that incorporate the requirements of the NVRA. It also claims

17

that any NVRA obligation it has to keep its voter lists current is subject to the general language in § 1973gg-6, which provides that a state shall:

> **(4)** conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of–
>
> **(A)** the death of the registrant; or
>
> **(B)** a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) of this section . . . .

Missouri argues that because subsection 4(B) mentions (b), (c) and (d) of § 1973gg-6, the obligations imposed in subsections (b), (c) and (d) are all subject to the reasonable effort standard. The Government contends that § 1973gg-6(b), (c) and (d) are absolute obligations and Missouri must do more than make a reasonable effort to meet the requirements.

While the NVRA is ambiguous, both its text and common sense suggests that Congress intended the "reasonable effort" standard of § 1973gg-6(a)(4) to apply to subsections (b), (c) and (d). Subsection (a)(4), which contains the reasonable effort standard, is a general, introductory provision and incorporates by reference subsections (b), (c) and (d). All these subsections also have a common subject matter, the removal of names of ineligible voters from the voter registration lists. This text strongly indicates that the subsections are to be read as a whole.

In addition, Congress could not have expected that a State program would ensure that no voter's name is ever removed from the voter registration list in violation of the

NVRA. It would be impossible for any state to achieve that result because human bureaucracies are fallible, modern society is mobile, and as previously discussed, elections are usually administered by multiple jurisdictions.

Given the language of the NVRA and the logical expectations of Congress, the Court finds that Missouri need only make a reasonable effort to maintain an accurate voter registration list that complies with the NVRA.[4]

Missouri contends that its NVRA program consists of HB 1411 and its subsequent amendments. It does not appear, however, that passing a statute consistent with the NVRA is enough to comply with § 1973gg-6(a)(4). The NVRA requires the states to appoint a state officer to be the "chief state election official to be responsible for coordination of state responsibilities under [the NVRA]." 42 U.S.C. § 1973gg-8. This designation contemplates more than statutory compliance which is something Congress could have achieved without the assistance of the states. Missouri seems to recognize this because it has done substantially more than statutory compliance.

At this juncture, it is not necessary to define the exact parameters of Missouri's

---

[4]There appears to be a distinction between what a state's program is expected to achieve and what remedy is available to an aggrieved party whose name is improperly removed from the voter registration list. A voter who has been removed in violation of the NVRA would be an aggrieved person with the right of direct enforcement to have his or her name replaced on the voter registration list. This would be so even if the State had made a reasonable effort to prevent such mistakes. At the same time, the State's program is in compliance with the NVRA because its efforts were reasonable. This interpretation would harmonize the Government's position that there is an absolute obligation imposed by § 1973gg-6(b)(c) and (d), and Missouri's position that its program only needs to make a reasonable effort to remove the names of voters who are ineligible because they have moved.

19

obligation because the Government contends that it needs additional discovery to test the veracity of Missouri's factual allegations and to uncover other relevant information about Missouri's compliance efforts. In the interest of a complete record, the Court will give the parties 60 more days to conduct discovery. No additional time will be granted given the limited additional discovery that the Government has identified, and the fact that it conducted an investigation before the lawsuit was filed.

After discovery is complete, both parties may file cross motions for summary judgment if material facts are not in dispute. An amended scheduling order will be entered to reflect these new deadlines.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Missouri's Motion for Summary Judgment [Doc. # 8] is GRANTED on any claim by the United States which seeks to hold Missouri responsible for enforcement of the NVRA against local election authorities. It is otherwise DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: May 23, 2006
Jefferson City, Missouri